**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ALBERT TALKER**, | |
| Plaintiff, | Civil Action No. 25-879 (ZNQ) (JTQ) |
| v. | **OPINION** |
| **MONMOUTH COUNTY**, *et al.*, | |
| Defendants. | |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon: (1) a Motion to Dismiss filed by Defendants the Monmouth Vicinage (improperly pled as the "Monmouth County Superior Court"), Tara Buckley, Amy Fischer, and Rachel Walton (collectively, the "Vicinage Defendants") (ECF No. 39); and (2) a Motion to Dismiss filed by Defendants Monmouth County New Jersey, Christine Giordano Hanlon, Teri O'Connor, and Shaun Golden (collectively, the "County Defendants") (ECF No. 14). The Vicinage Defendants and the County Defendants filed briefs in support of their motions ("Vicinage Moving Br.," ECF No. 39-1) ("County Moving Br.," ECF No. 14-1). Plaintiff Albert Talker ("Plaintiff"), proceeding *pro se*, filed several opposition briefs. (ECF Nos. 19, 22, 41.) The Vicinage Defendants filed a reply. ("Vicinage Reply Br.," ECF No. 41.)

1

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons set forth below, the Court will **GRANT** the Vicinage Defendants' and the County Defendants' Motions to Dismiss and dismiss the Amended Complaint.

## I.      BACKGROUND AND PROCEDURAL HISTORY

### A.      THE FINAL RESTRAINING ORDER

On November 6, 2008, Monmouth County Superior Court issued a final restraining order (the "FRO") against Plaintiff.  (*See* Am. Compl. at 4.)  Plaintiff argues that his former spouse sought the FRO to "circumvent immigration restrictions."  (*Id.*)  Plaintiff also challenges the legitimacy of the FRO hearings, noting that the credibility of several testifying witnesses was later discredited in other proceedings.[2]  (*See* Am. Compl., Ex. A at 1–2.)  Plaintiff further alleges "systemic racial and religious bias within [ ] Monmouth County, evidenced by recurrent unjust rulings and obstruction of due process rights" and an unnamed judge's personal favoritism.  (*See* Am. Compl. at 6–7.)

### B.      TRANSFER OF THE FRO

The FRO was transferred to Union County on May 5, 2011.  (*See* Am. Compl. at 5.)  On December 10, 2024, the Union County Superior Court dismissed the restraining order.  (*Id.*)  Plaintiff alleges that Monmouth County failed to update its records to reflect that the restraining order was dismissed.  (*Id.*)

---

[1] All references to "Rules" hereinafter refer to the Federal Rules of Civil Procedure unless otherwise noted.

[2] It is unclear on the face of the Amended Complaint whether Plaintiff alleges that hearings in Union County Superior Court or an unrelated appeal (A-2175-08-T2) addressed the credibility of the aforementioned witnesses' testimony in the Monmouth County Superior Court proceedings.

### C.     "BORDER POLICE" ENCOUNTER

Prior to the dismissal of the FRO, in December 2023, "Border Police" contacted Monmouth County officials regarding the FRO while Plaintiff was traveling with his adult children.  (*Id.* at 4.)  Border Police were informed that the FRO imposed certain restrictions as to Plaintiff's interactions with his children.  (*Id.*)

### D.     PROCEDURAL HISTORY

On January 20, 2025, Plaintiff filed the Complaint.  (*See* ECF No. 1.)  Thereafter, on March 17, 2025, Plaintiff filed the Amended Complaint.  (*See* ECF No. 9.)  The Amended Complaint alleges the following causes of action: (1) violation of Due Process under the Fifth and Fourteenth Amendments ("Count I"); (2) violation of Equal Protection under the Fourteenth Amendment ("Count II"); and (3) civil conspiracy under 42 U.S.C. § 1983 ("Count III").[3]  (*See* Am. Compl. at 7–8.)  Plaintiff seeks a declaration that Defendants' actions were unconstitutional, immediate correction of judicial records, and $4 million in compensatory and punitive damages.  (*See id.* at 9.)

## II.     SUBJECT MATTER JURISDICTION

Given Plaintiff's federal claims, the Court has jurisdiction based on 28 U.S.C. § 1331 and § 1343.  (*See id.* at 2.)

## III.     LEGAL STANDARD

### A.     RULE 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the subject-matter jurisdiction of the court.  Fed. R. Civ. P. 12(b)(1).  Under Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim."  *In re Schering Plough*

---

[3] The Court construes Plaintiff's constitutional claims (Counts I and II) as brought under 42 U.S.C. § 1983, the statute by which Plaintiff may seek relief for his alleged constitutional violations.

3

*Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ("*Temodar*"); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The first step in analyzing a jurisdictional challenge under a Rule 12(b)(1) motion is to determine whether the "motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014) (quoting *Temodar*, 678 F.3d at 243). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to 'consider the allegations of the complaint as true.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). "But a factual 12(b)(1) challenge attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Id.* (citing *Constitution Party of Pa.*, 757 F.3d at 358).

When analyzing a facial attack on subject-matter jurisdiction, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Temodar*, 678 F.3d at 243 (quoting *Gould Elecs. Inc., v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). "The person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

"[A] pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers . . . .'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Because Plaintiff brings this action

*pro se*, the Court will liberally construe the Amended Complaint and "apply the applicable law, irrespective of whether [he] has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)).

**B.      RULE 12(b)(6)**

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.    DISCUSSION

### A.    THE VICINAGE DEFENDANTS

The Vicinage Defendants contend that the Amended Complaint must be dismissed because they are immune from suit under the Eleventh Amendment.  (*See generally* Vicinage Moving Br.) For the reasons set forth below, the Court agrees.

The Eleventh Amendment bars civil lawsuits against states, "but also suits for damages against 'arms of the State'—entities that, by their very nature, are so intertwined with the State that any suit against them renders the State the 'real, substantial party in interest.'"  *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016) (citation omitted).  State courts and related employees are considered "arms" of the state, and are therefore immune from suit, both monetary and equitable, for conduct that occurred while serving in their official capacity.  *See Dongon v. Banar*, 363 F. App'x 153, 156 (3d Cir. 2010) ("[S]tate courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and therefore considered 'arms' of the state."); *see also ASAH v. N.J. Dep't of Educ.*, Civ. No. 16-3935, 2017 WL 2829648, at *8 (D.N.J. Jun. 30, 2017) (noting that courts "have routinely held that sovereign immunity applies to a state or state agency, regardless of whether legal or equitable relief is sought.").

Plaintiff alleges three causes of action as to the Monmouth County Superior Court and various court employees.  However, because the Vicinage Defendants are "arms of the state" and "officials acting in their official capacities," they are not appropriate parties to a § 1983 suit.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 59, 71 (1988); *see also Endl v. State*, 5 F. Supp. 3d 689, 697 (D.N.J. 2014) (holding that the State of New Jersey "is not considered a 'person' for purposes of Section 1983 because it is protected by sovereign immunity"); *Dongon*, 363 F. App'x

at 156 (holding that New Jersey state court employees are entitled to sovereign immunity because they are "arms" of the State).

Therefore, Plaintiff's claims as to the Vicinage Defendants must be dismissed without prejudice for lack of jurisdiction.[4]  In the absence of jurisdiction, the Court further finds that it would be futile to provide Plaintiff with an opportunity to further amend his complaint as to the Vicinage Defendants.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *see also Siravo v. Crown, Cork & Seal Co.*, 256 F. App'x 577, 580 (3d Cir. 2007) ("Where a district court lacks subject-matter jurisdiction, its 'disposition of such a case will . . . be without prejudice.'" (quoting *Ray v. Eyster (In re Orthopedic "Bone Screw" Prods. Liab. Litig.)*, 132 F.3d 152, 156 (3d Cir. 1997))).

### B.      THE COUNTY DEFENDANTS

The County Defendants contend that the Amended Complaint must be dismissed because Plaintiff fails to state a claim upon which relief can be granted.  (*See generally* County Moving Br.)

To state a claim for relief under § 1983, a plaintiff must allege (1) a violation of a right secured by the Constitution or laws of the United States and, (2) that the alleged deprivation was committed or caused by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir.1994).

---

[4] Because the Court dismisses Plaintiff's claims against the Vicinage Defendants based on a jurisdictional bar, the Court does not address the Vicinage Defendants' alternative arguments that Plaintiff has failed to state a claim under Rule 12(b)(6) or that Plaintiff's claims are barred by the doctrine of quasi-judicial immunity.

As a first matter, none of the County Defendants would have had a role in issuing the FRO. The Court held in a previous suit brought by Plaintiff challenging the FRO's original issuance that the County Defendants do not exercise any authority over the Monmouth County Superior Court.[5]

As best as the Court can discern, what therefore remains of Plaintiff's claims against the County Defendants is his vague allegation that "Monmouth County officials continued maintaining" the dismissed FRO "[d]espite being notified of the invalidity and inaccuracy of the FRO records." (*Id*.)  Plaintiff has made "repeated requests to rectify the record." *Id*.

Plaintiff fails to plead the first element of a § 1983 claim: the County Defendants caused him a constitutional harm.  First, it is not clear whether Plaintiff is alleging that his FRO is still showing as active in some municipal record and he is seeking to have that record updated to reflect its dismissal, or whether Plaintiff is seeking to have the FRO expunged from a record entirely. Second, it is not clear from the Complaint whether the County Defendants are the ones who actually maintain the relevant FRO records or whether those records are maintained by the state courts.

Second, Plaintiff has not alleged a cognizable injury.  That is, he has not pled how the purportedly incorrect record has violated—or is violating—his rights to Due Process or Equal Protection.  The Court notes that Plaintiff's 2023 interaction with "Border Police" occurred before the FRO was dismissed in 2024.  Courts have held that failure to maintain accurate records can be actionable if it *leads* to a constitutional injury, such as when a person is detained on an invalid

---

[5] The Court takes judicial notice that the dynamic between the Monmouth County Superior Court and Monmouth County was explained to Plaintiff in a similar case he filed in this District in 2012. *See Talker v. Monmouth Cnty*, Civ. No. 12-2019, 2012 WL 2951857, at *3 (D.N.J. Jul. 17, 2012) ("[T]he County does not exercise supervisory authority over the Monmouth County Superior Court.").

warrant due to inadequately updated warrant records.  *See, e.g.*, *Murray v. City of Chicago*, 634 F.2d 365 (7th Cir. 1980) (vacating district court's summary judgement for office personnel responsible for maintaining current arrest warrant records because "[i]t seems clear that appellant sustained a violation of constitutional rights by being arrested and detained pursuant to an invalid warrant" and "someone is surely at fault for failing to establish or execute appropriate procedures for preventing such serious malfunctionings in the administration of justice.")  Plaintiff, however, has pled no injury flowing from the allegedly outdated FRO records.

Third, as to the individual County Defendants—O'Connor, Golden, and Hanlon—Plaintiff does not allege facts establishing that each of them had any personal involvement in his case, as is required to bring a § 1983 claim against them.  *See Natale v. Camden Cnty Correctional Facility*, 318 F. 3d 575, 583–84 (3d Cir. 2003).  "[A] defendant in a civil rights action must have personal involvement in the alleged wrongs . . . ."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  To demonstrate personal involvement, a plaintiff must allege personal direction or "actual knowledge and acquiescence."  *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995) (quoting *Rode*, 845 F.2d at 1207.)

Finally, to the extent Plaintiff is attempting to plead claims against the County and the individual County Defendants in some capacity as supervisors, local government units and supervisors are not liable under § 1983 solely on a theory of *respondeat superior*.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n. 8 (1985); *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690–91, 694 (1978) (holding that municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of).

The Court now turns to Plaintiff's conspiracy allegations against the County Defendants. "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights."  As to the latter, deprivation element, given that the Court has dismissed Plaintiff's asserted direct claims for constitutional violations against the County Defendants, they cannot serve as the basis for the conspiracy claim.  Plaintiff's conspiracy claim can be dismissed on that basis alone.  *See Talley v. Varner*, 786 F. App'x 326, 329 (3d Cir. 2019).

As to the former "reached an understanding" element, a plaintiff must do more than merely allege a conspiracy to state a claim.  A factual grounding is required.  *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (noting the "mere general allegation ... [or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]" (alterations in original); *Islaam v. Kubicki*, 838 F. App'x 657, 661 (3d Cir. 2020) (affirming dismissal where "the amended complaint contained only conclusory allegations of conspiracy with no factual grounding.").

Here, Plaintiff merely alleges that "Defendants collectively conspired to deny [his] constitutional rights, obstructing justice and fairness in court proceedings."  (Am. Compl. at 7.) These allegations are too conclusory on their face to plead a plausible conspiracy claim.  The Amended Complaint does not articulate when an agreement to deprive Plaintiff of his constitutional rights was reached, or assert any facts supporting the notion that a concerted activity occurred.  The Court therefore finds that Plaintiff's § 1983 conspiracy claim (Count III) must also be dismissed for failure to state a claim.

Accordingly, all of Plaintiff's § 1983 claims against the County Defendants will be dismissed without prejudice.

10

## V.     **CONCLUSION**

For the reasons stated above, the Court will **GRANT** the Vicinage Defendants' and the County Defendants' Motions to Dismiss.   The Amended Complaint will be **DISMISSED WITHOUT PREJUDICE**.  Plaintiff will be granted leave to file a Second Amended Complaint within 30 days, limited to remedying the deficiencies identified in this Opinion as to the County Defendants.   (Plaintiff is NOT granted leave to amend his Complaint as to the Vicinage Defendants.)  Plaintiff is cautioned that if he fails to file a Second Amended Complaint by that deadline or fails to remedy the deficiencies identified herein, his Complaint may be dismissed with prejudice.  The Clerk's Office will be instructed to ADMINISTRATIVELY TERMINATE this matter pending Plaintiff's filing of a Second Amended Complaint.  An appropriate Order will follow.

Date: May 11, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

11